47 CCPA

**TROPIC-AIRE, INCORPORATED (Mc-Graw-Edison Company, assignee substituted)**

v.

**APPROVED PRODUCTS, INC., Doing Business as Windsor Chemical Laboratories.**

Patent Appeal No. 6473.

United States Court of Customs and Patent Appeals.
March 8, 1960.

Rehearing Denied May 24, 1960.

Olson & Trexler, Chicago, Ill. (Robert M. Wolters, Chicago, Ill., and Charles L. Sturtevant, Washington, D. C., of counsel), for appellant.

Kimmel & Crowell, Washington, D. C. (George P. Kimmel, A. Harry Crowell and David Paul Weaver, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Assistant Commissioner of Patents (117 USPQ 104) reversing the decision of the Examiner of Interferences which sustained appellant's opposition to appellee's application for trademark registration Serial No. 661,683, filed February 26, 1954, for "Tropic Air" for "Spray chemical room deodorizer compound for reducing air borne bacteria and eliminating offensive odors," first use in February 1952 being asserted. Appellant in opposing the registration relies on two

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

O'CONNELL, pursuant to provisions of Section 294(d) Title 28 U.S.C.

registrations of the word mark "Tropic-Aire," one being for automotive heaters,[1] the other for air heating, air cooling and ventilating units for motor vehicles.[2] Opposer additionally relies on evidence of use of the mark on a wide variety of other goods.[3]

At the outset we will dispose of applicant's contention that the differences in the marks themselves are "not without considerable significance." In this regard applicant points to an outline background which surrounds its mark as illustrated in the application drawing and in addition states that opposer's mark "Tropic-Aire" is printed as one line while in the application "Air" is printed below and to the right of "Tropic." We note, however, that on applicant's specimen label, filed with the application, the words "Tropic" and "Air" appear in two distinct places, one occurrence being on two lines as alleged, but the other is on a single line, and the background is used only with one occurrence. Also, differing typography is used. The similarity in appearance and the identical sound and connotation leads us to conclude that for the purposes of this case the marks are identical. Both are essentially word marks and we do not consider minor differences in display to be significant.

The marks being here identical, the only other issue before us is whether "Tropic Air" when applied to the goods of the applicant—spray chemical room deodorizers—would be likely to result in confusion or mistake or to deceive purchasers.

Opposer took the testimony of ten witnesses (no attorney appearing to cross-examine for applicant) to establish the type of goods to which opposer and its predecessor had applied the mark "Tropic-Aire," the periods and extent of use, and the relation of these goods to those of the applicant. It is with respect to the bearing of this evidence on the ultimate issue that the Examiner of Interferences and the Assistant Commissioner reached opposite results.

The examiner sustained the opposition finding that:

"The evidence establishes that the subject mark was used for hot water heaters for passenger cars and buses from 1926 to 1951; for bus seats from 1938 to 1950; for air conditioning equipment for motor vehicles including trailers from 1938 to the present; for window air conditioning units in 1950, 1951 and 1956; for sewing machines and baby carriages in 1949 and 1950; and for electric water heaters, electric blankets, electric sheets, electric heaters including radiant and fan types, electric roasters and hot plates, since at least 1951.

\* \* \* \* \* \*

"Opposer's record further establishes that chemical deodorizers are commonly used in connection with air conditioners or ventilating devices and fans, and that air conditioning or ventilating equipment are sold by the same sources through the same channels of trade as chemical deodorizers.

\* \* \* \* \* \*

"Under the foregoing circumstances, it appears to be clear that a purchaser familiar with the Tropic-Aire mark on air conditioning and ventilating equipment and

---

1. Reg. No. 237,236, issued January 3, 1928, renewed January 3, 1948, and republished under the Trademark Act of 1946, 15 U.S.C.A. § 1051 et seq., on December 28, 1948.

2. Reg. No. 363,646, issued January 3, 1939, and republished under the Trademark Act of 1946 on February 1, 1949.

3. Appellant asks that we also take judicial notice of Reg. No. 624,844, filed Septem-

ber 15, 1954, for electric blankets, electric sheets, and temperature controls therefor, electric convection and reflection air heaters, combined electric air heaters and electric fans, issued April 10, 1956, subsequent to the filing of the notice of opposition. Since application for this registration was filed subsequent to applicant's filing, it would not establish prior use of "Tropic-Aire" on the goods named in the registration.

fans on seeing the Tropic-Aire mark on a chemical deodorizer, would normally assume that the products emanate from the same source; \* \* \*. Moreover, it is clear that under the evidence adduced the addition of a chemical deodorizer to opposer's air moving equipment and the separate marketing of such a deodorizer by opposer under its present mark, would be a natural expansion of opposer's business."

The Assistant Commissioner, disagreeing with these findings, dismissed the opposition saying:

"The decision of the Examiner of Interferences presupposes that opposer has used the mark 'Tropic-Aire' on 'ventilating apparatus [equipment] and fans', but there is nothing in the record to support such a finding.

\* \* \* \* \* \*

" \* \* \* there is nothing in the record which would support a finding that it is common practice to utilize room deodorizers in conjunction with window type air conditioners, or that manufacturers of window type or any other type of air conditioners also sell room deodorants, or that room deodorizers and air conditioning units are sold to the same average purchasers through the same trade channels under the same or similar circumstances and conditions of purchase. Room deodorants are not believed to fall within the area of 'normal expansion of business' of a manufacturer of air conditioners.

"In view of the differences in products, the differences in markets, and the differences in circumstances and conditions surrounding the purchase of the respective goods, it is concluded that there is no likelihood of confusion within the purview of the statute."

Comparing the views of the tribunals below as indicated by the foregoing quotations therefrom it will be evident that there was a considerable difference of opinion as to controlling facts as well as legal conclusions. We cannot completely agree with either the examiner or the Assistant Commissioner.

We believe the evidence shows that opposer has used "Tropic-Aire" on ventilating apparatus and fans which, as stated in opposer's brief, are items that "relate to movement of air." Tropic-Aire, Inc., prior to 1951 when it became a subsidiary of McGraw-Edison Company, enjoyed substantial good will in the mark "Tropic-Aire" in the field of automobile and bus hot water heaters and air-conditioning units for buses and trailers. In addition to its use on other goods prior to 1951, "Tropic-Aire" was also applied to room air-conditioners. The extent of the latter use, however, is not clear from the record. After acquisition by McGraw-Edison Company, Tropic-Aire, Inc., discontinued production of bus and auto hot water heaters, room air-conditioners, and bus air-conditioners, production of the latter being transferred to the Clarke Division of McGraw-Edison Company. In April 1951, Tropic-Aire, Inc., obtained the small appliance business of Swartzbaugh Company of Toledo including a line of portable room heaters of both the radiant and convection type. The witnesses, Mr. Bonitzer, Treasurer of Tropic-Aire, Inc., since 1951, and Mr. Berstead, Vice President of McGraw-Edison Company and President of Tropic-Aire, Inc., identified certain sales catalogs illustrating certain models of room heaters having labels bearing the mark "Tropic-Aire" and testified that the mark "Tropic-Aire" has been used on these heaters since 1951. As to one model of the heaters illustrated in the catalog and entered on certain sales invoices, Mr. Berstead testified that: " \* \* \* it was a heater and fan combination. In other words it could be used as a heater when heat was wanted, a circulating heater, or it could be used as a fan without a heating element." Mr. Berstead also testified that McGraw-Edison Company was then, in 1956,

making window air-conditioners and that "it was on the agenda" to sell the units under the name "Tropic-Aire." Opposer also introduced testimony and exhibits showing that at least one company advertised and sold liquid chemical air deodorants, which may be dispersed by a small portable fan unit as well as by central and room air-conditioning.

Appellant is the undisputed owner of two registrations of the mark for heaters, air heating, air cooling and ventilating units for motor vehicles, which registrations are still in force. These registrations must be considered under section 2(d) of the Trademark Act, 15 U.S.C.A. § 1052(d), notwithstanding the evidence that tends to show the registrant is no longer using the mark on some of the goods enumerated therein. General Shoe Corp. v. Lerner Bros. Mfg. Co., Inc., 254 F.2d 154, 45 CCPA 872. Opposer has also shown that he applied the mark to portable heaters, and fan and heater combinations; that purchasers of a spray deodorant might also be purchasers of a small portable fan unit for dispersing the deodorant throughout the room; and that opposer has in the past applied the mark to room air-conditioners, albeit that use was transient, the president testifying that in 1956 room air-conditioners were again being made by opposer and "it is on the agenda to sell window type air-conditioners under such mark."

We feel that chemical deodorants as described in appellee's application would be likely to be associated in the mind of the purchasing public with air moving and treating and as we find the marks of applicant and opposer to be identical, we are of the opinion that those familiar with the varied products of opposer relating to air moving and treating and bearing the trademark "Tropic-Aire," would, upon seeing "Tropic Air" on other air treating products such as appellee's deodorants, conclude that they had the same source or origin.

In reaching this conclusion we have discounted certain factors which appear to have swayed the lower tribunals. We

have given little weight to opposer's use of "Tropic-Aire" on bus seats, bus heaters, or air-conditioning units for buses and trailers. We have recognized the limited extent of the use on window air-conditioning units. We appreciate that it is not *likely* that a factory making electrical hardware would expand into the *manufacture* of chemical products, though strange bedfellows are to be found in industry; but it does not follow that a company marketing heaters and fans would not also *sell* an air deodorizer. People interested in heating, cooling or moving the air in their homes would be obvious prospects for such products. At first blush it might seem that opposer's sales under the "Tropic-Aire" trademark of such items as sewing machines, baby carriages, electric water heaters, electric blankets and sheets, electric roasters and hot plates are rather far afield. It is our view, however, that the very diversity of these products, which have served to keep "Tropic-Aire" before the consuming public as a trademark even though some of them are not now on the market, make it all the more likely that purchasers would think that "those 'Tropic-Aire' people" had brought out another product if they saw on the market a spray deodorizer for home use bearing the trademark "Tropic-Aire." We hold this opinion even if it is not a common practice to use spray deodorizers in conjunction with home air-conditioning window units.

For the reasons given above the opposition should be sustained and the decision of the Assistant Commissioner of Patents is reversed.

Reversed.

MARTIN, Judge (concurring).

This case is one in which a doubt has arisen in my mind as to whether the mark of applicant when applied to its goods would be likely to cause confusion or mistake or to deceive purchasers. That doubt must be resolved against the newcomer, and for that reason only I concur in the result reached by the majority.